NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 06-CV-07-KKC

DAVID KENT BENTLEY                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

FRANKLIN COUNTY REGIONAL JAIL, ET AL.                    DEFENDANTS

This matter is before the Court, *sua sponte*, for consideration of the "Show Cause Order" entered herein on February 23, 2007 [Record No. 44]. The "Show Cause Order" was entered because David Kent Bentley, the *pro se* plaintiff, had not filed a response to either the "Motion for Summary Judgment" filed by Defendants Franklin County Regional Jail ("FCRJ") and Jailer Ted Hammermeister [Record No. 42][1] or the "Motion for Summary Judgment" filed by Defendants Ryan Waldridge, M.D., and Nurse Linda Bemis [Record No. 43].

In the "Show Cause Order," the Court informed the plaintiff that it would consider granting the motions and dismissing his claims for want of prosecution. The Court warned the plaintiff that he had twenty days from the date of entry of that Order in which to respond.

---

[1] Defendant Bill Reed was not served with the complaint [*see* Record No. 32, "Summons Returned Unexecuted by USM EDKY for David Kent Bentley as to Bill Reed."]. The unexecuted summons is accompanied by a letter from the FCRJ, which states that Bill Reed retired from the FCRJ on December 31, 2005. The United States Marshal's Office did not re-attempt service on Reed at the forwarding address provided by the FCRJ.

Defendants FCRJ and Ted Hammermeister note in their motion that Defendant Reed was not served with process in this action [*see* Record No. 42-2, p. 7]. In the interest of judicial economy, and because Reed had been an employee of the FCRJ prior to his retirement, they offer *de facto* representation of Reed. They set forth specific grounds why the plaintiff's claims against Reed should be dismissed [*Id*].

The record reflects that on February 23, 2007, the Clerk of the Court mailed a copy of the "Show Cause Order" to the plaintiff's most recent address listed of record in this case, being David Kent Bentley, #198911, Roederer Correctional Complex, P.O. Box 69, LaGrange, Kentucky 40031 [*see Id.* (Attachment:  Clerk's Notation)].

As noted in the "Show Cause Order," the plaintiff has taken no effort to inform this Court of any new or updated mailing address.   The United States Postal Service has not returned this mailing to the Clerk of the Court.   The twenty days granted to the plaintiff in the "Show Cause Order" have expired, and the plaintiff has not responded.   The Court will therefore examine the underlying Motions for Summary Judgment in the absence of a response from the plaintiff.

<u>DISCUSSION</u>
1. <u>Standard of Review</u>

In determining a motion for summary judgment, the Court must determine that there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  A court must look beyond the pleadings and assess the proof to determine whether there is a genuine  need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A district court is required to examine a motion for summary judgment  to ensure that the a

moving party has discharged his burden. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). It must draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967, 118 S. Ct. 414 (1997). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. at 322.

Even when a non-movant fails to respond to a motion for summary judgment, the district court must still "examine the movant's motion . . . to ensure that he has discharged [his] burden." *Carver v. Bunch*, 946 F.2d at 455. Here, Plaintiff Bentley has filed no response to either motion for summary judgement.

The Sixth Circuit accepts a verified complaint, to the extent that it is based on personal knowledge, as an opposing affidavit within the meaning of Fed. R. Civ. P. 56(e). *See Hooks v. Hooks*, 771 F.2d 935, 945-46 [th] Cir. 1985). Accordingly, the Court will consider the complaint, the numerous construed amended complaints, and various other filings by the plaintiff as a collective response to the motion for summary judgment.

## 2. Alleged Failure to Render Medical Care
### A. Factual Summary

On January 18, 2006, the plaintiff filed a written grievance in which he complained about the lack of medical treatment he was receiving in connection with stomach and/or esophagus- related ailments. Plaintiff Bentley wrote Jailer Hammermeister a letter in which he complained that his medical condition was not being taken seriously and requested a thorough medical evaluation. According to Jailer Hammermeister and Nurse Bemis, they met with Plaintiff Bentley to discuss the

3

medical grievance.  At that time, Plaintiff requested to be seen by Dr. Ryan Waldridge.

The defendants allege that they properly responded to the plaintiff's demand for additional medical care.  They explain that Plaintiff Bentley continued to be followed by medical personnel.  The defendants further state that medical staff thereafter evaluated the plaintiff on January 18, 23, 25, and 26, 2006.

As noted, the plaintiff did not respond to this specific allegation because he did not respond to the motion in <u>any</u> fashion.  The Court nots that back on June 5, 2006, Bentley had filed a handwritten pleading [Record No. 34], in which he again generally alleged that the FCRJ denied him adequate medical care.

The defendants attached various medical reports which indicate a contrary result.  The "Physicians Orders" document that the FCRJ staff rendered medical attention to the plaintiff on numerous occasions.  Additionally, staff administered prescriptions of numerous kinds as set forth below:

(1)     <u>September 13, 2005</u>:  Plaintiff was examined and prescribed Motrin for a dental problem.

(2)     <u>October 6, 2005</u>:  Plaintiff was examined and prescribed Elavil and other medications and a call was made to "Dr. Hughes' office to schedule." [2]

(3)     <u>October 14, 2005</u>:  Plaintiff was examined and prescribed Keflex, 500 mg.

(4)     <u>October 28, 2005</u>:  Plaintiff was examined and prescribed Keflex, 500 mg.

(5)     <u>January 3, 2006</u>:  Plaintiff was examined and prescribed tetracycline for a finger

_____

[2] The medical staff's handwritten notations were difficult to read in passages.  The entries clearly note, however, that Plaintiff Bentley was evaluated and treated.

injury.

(6)   <u>January 11, 2005</u>:  Plaintiff was examined for complaints of nausea and anorexia. The FCRJ medical staff determined the plaintiff may have the flu.  Staff rechecked the plaintiff's weight on January 13, January 15, and January 17, 2006.

(7)   <u>January 18, 2006</u>:  Plaintiff was again examined for nausea and anorexia.  The diagnosis was gastritis.  The notes state "continue current tx" (presumably, treatment).

(8)   <u>January 25, 2006</u>:  Plaintiff was examined and numerous tests were run (CBC/ CMP/ Anylase/ Lipase tests).

(9)   <u>February 3, 2006</u>:  A diabetic test was administered to Plaintiff.

(10)   <u>February 7, 2006 - April 19, 2006</u>:  In this interim, the plaintiff was examined and treated on ten (10) different occasions for a myriad of complaints [*see* Record No. 42-7; 42-8; and 42-9 (medical notations)].

### B.  Eighth Amendment (Medical) Legal Standards

In order to state a cognizable claim under the Eighth Amendment regarding medical care, a prisoner must show both "deliberate indifference" and a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To substantiate an allegation of deliberate indifference, a prisoner must establish that the deprivation was sufficiently serious *and* that officials acted with a sufficiently culpable state of mind.  *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

The Eighth Amendment claims contain both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991).  The objective component requires the plaintiff to show that he has been subjected to specific deprivations so serious that they deny him "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101

5

S. Ct. 2392 (1981).  The subjective component requires the plaintiff to demonstrate that prison officials acted wantonly, with deliberate indifference to the plaintiff's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).

Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice.  *Id.* at 835-36.  Deliberate indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983.  *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956,958 (6th Cir. 1989).  The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness.  *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994).  An official must show a conscious disregard to a substantial risk that the inmate will experience serious harm. *Farmer v. Brennan*, 114 S. Ct. at 1979.

## C.  Facts Applied to Standards

Here**,** the plaintiff was undeniably given continuing medical attention, treatment, analysis and was prescribed numerous medications.   The Court can not discern any knowing or deliberate indifference to the plaintiff's medical needs.  In fact, the record reveals just the opposite.   The plaintiff received ongoing medical care, probably more than some persons who are not incarcerated. As the defendants correctly note, Bentley's complaints amount to nothing more than a dispute as to the adequacy of his treatment.

When a plaintiff claims deliberate indifference to his serious medical needs but the case

6

involves a difference of opinion between the prisoner and a doctor regarding the prisoner's diagnosis and treatment, an Eighth Amendment medical claim is not established. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.[3]

In light of the law on this issue; the undisputed medical evidence verifying that the plaintiff was in fact treated for various conditions on various dates; and the fact that the plaintiff failed to file anything in response to the motions for summary judgment, the Court finds that the defendants have met their burden of proof as established in Fed. R. Civ. P. 56 and *Celotex*. The Court will grant the defendants' motion for summary judgment on the issue of alleged denial of medical care under the Eighth Amendment and dismiss those claims with prejudice.

3. <u>Alleged Failure to Place Plaintiff on Suicide Watch and</u>
<u>Alleged Failure to Deliver Mail</u>

Plaintiff alleges that he was not properly classified when placed on suicide watch and that he was deprived of receiving mail in a timely fashion. These claims would fall under the Eighth and First Amendments of the United States Constitution, respectively. The defendants contend that the plaintiff failed to file any grievance either as to being placed on suicide watch or the untimely receipt of his mail. They claim that during the period of incarceration that gave rise to this lawsuit, Plaintiff filed only medical grievances.

---

[3] There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas*'s holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which would sound in state tort law. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003).

The Prison Litigation Reform Act (PLRA) requires that a prisoner must exhaust administrative remedies before filing suit in the district court. 42 U.S.C.A. §1997e. It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a) .

The Supreme Court of the United States has twice examined the statute and held that it means precisely what it says. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, the Sixth Circuit has repeatedly ruled that merely starting the administrative procedures is insufficient. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Here, Plaintiff Bentley has failed to adequately dispute the defense of lack of exhaustion of administrative remedies as to alleged misclassification to suicide watch and interference with the timely receipt of his mail. In the verified answer filed on behalf of the FCRJ and Jailer Ted Hammermeister [Record No. 33], Jailer Hammermeister stated that Plaintiff Bentley filed no grievance as to either his claims of misclassification to suicide watch and/or interference with the timely receipt of his mail. The plaintiff has filed nothing to contradict this contention, despite having ample opportunity to do so. The defendants have met the burden necessary to justify summary judgment on these claims.

4. Demand for Injunctive Relief

Plaintiff Bentley demands medical treatment from the FCRJ. The Court must deny that request. The plaintiff has now been transferred to the RCC. As the defendants accurately note, an inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due

8

to the inmate's release from confinement, or transfer to another facility. *McAlpine v. Thompson*, 187 F.3d 1213,1215 (10th Cir. 1999); *Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for injunctive relief became moot after he was transferred to another facility); and *Magee v. Waters,* 810 F.2d 451, 452 (4th Cir. 1987) (prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred).

<u>CONCLUSION</u>

Accordingly,  the Court being duly and sufficiently advised, **IT IS ORDERED** as follows:

(1)     The "Motion for Summary Judgment" filed by Defendants Franklin County Regional Jail ("FCRJ"); Jailer Ted Hammermeister; and Bill Reed [Record No. 42] is **GRANTED**.

(2)     The "Motion for Summary Judgment" filed by Defendants Ryan Waldridge, M.D., and Nurse Linda Bemis, in both her individual and official capacities [Record No. 43], is **GRANTED**.

(3)     This action is **DISMISSED WITH PREJUDICE** and Judgment shall be entered contemporaneously with this Order in favor of the named defendants:  the Franklin County Regional Jail; Jailer Ted Hammermeister; Ryan Waldridge, M.D.; Nurse Linda Bemis, in both her individual and official capacities; and Bill Reed, former employee of the FCRJ.

Dated this 20th day of March, 2007.



Signed By:

*Karen K. Caldwell*

**United States District Judge**